UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LPP Mortgage Ltd., | ) | |
|            Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 08-1303 |
| | ) | |
| Hartzell, Glidden Tucker & Hartzell; and | ) | |
| Thomas F. Hartzell, | ) | |
|            Defendants | ) | |

**ORDER and OPINION**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court is Plaintiff's motion for partial summary judgment (#49). The motion is fully briefed, and I have carefully considered the arguments and evidence submitted by the parties. As explained herein, the motion is granted.

**JURISDICTION AND VENUE**

Plaintiff LPP Mortgage Ltd. is a limited partnership organized under Texas law, with its principal place of business in Texas. Its sole general partner is Property Acceptance Corporation, which is a corporation incorporated under the laws of Texas and having its principle place of business in Texas. The sole limited partner of LPP is Beal Nevada Corporation, incorporated under the laws of Nevada with its principle place of business in Nevada.

Defendant Hartzell Glidden Tucker & Hartzell is a general partnership organized under the laws of Illinois and having its principle place of business in Illinois. Its partners - Franklin M. Hartzell, John R. Glidden, Stanley L. Tucker, and Defendant Thomas F. Hartzell - are each citizens of Illinois.

The amount in controversy is alleged to exceed $75,000.

The parties being of diverse citizenship and the amount in controversy being in excess of the statutory minimum, this Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. 1332.

A substantial part of the events giving rise to this action occurred in Hancock, Illinois, a county within the Central District of Illinois, Peoria Division. Venue is therefore proper in this Court.

## SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

# FACTS

In August of 2000, LPP Mortgage Ltd. ("LPP")[1] purchased a bundle of mortgages and promissory notes from the Small Business Administration ("SBA"). Included was a promissory note (the "Note") secured by a mortgage (the "Mortgage") on real property located in Nauvoo, Illinois. The Note was in default, and in January of 2001, LPP retained the law firm of Hartzell, Glidden, Tucker & Hartzell to foreclose the Mortgage. A partner in that law firm, Thomas Hartzell, was primarily responsible for representation of LPP in the foreclosure action. Unless otherwise required by context, the law firm and Thomas Hartzell will be referred to cumulatively as "Hartzell" in this Opinion.

On behalf of LPP, Hartzell filed a complaint of foreclosure on the Mortgage and Note in the Circuit Court of Hancock County Illinois, LPP Mortgage v. John Condren, et al, Case No. 01-CH-23. The complaint alleged, *inter alia*, that the Mortgage had been assigned to LPP by the SBA. Defendants denied that allegation and "demanded strict proof thereof."

The Hancock County court held a bench trial on November 16, 2006. (Partial transcript of trial and transcript of Court's ruling are included as Exhibits 1 and 2 to Hartzell's response to the instant motion). At trial, Hartzell introduced as evidence the assignment of the Note. The contents of the assignment required that a power of attorney be prepared and recorded, showing that the person signing the assignment was authorized by SBA to make the assignment. At the close of LPP's case, the trial court directed a verdict against LPP, because no completed and recorded power

---

[1]As noted in the Jurisdiction section above, the limited partner in LPP is Beal Nevada Corporation. Although the parties to this action have not made it clear, the transcript of the state court proceedings (Exh. 5 to Response) indicates that LPP was formerly known as Beal Bank. Neither party has ascribed any significance to the distinction, so the Court will do likewise.

of attorney had been introduced; all that was in the record was a power of attorney, never recorded and invalid after June 1, 2001. The evidence was, according to the trial court, insufficient to establish that SBA had validly assigned the Mortgage to LPP. Without such evidence, the court held that LPP lacked standing to enforce the Mortgage. Judgment was entered against LPP on January 9, 2007.

At the same time as and also pending in Hancock County was a quiet title action, brought by the owner of the Nauvoo property against LPP, C. Michael Trapp et al v. LPP Mortgage, Case No. 01-CH-12. LPP was represented by counsel, but not by Hartzell, in the quiet title action. At a hearing held on January 9, 2007, the state court judge declined to quiet title in favor of either party, because the Mortgage on record was in favor of the SBA, which was not a party to the litigation but "may have a claim against the property." The quiet title action remained pending but inactive until it was dismissed for lack of prosecution on March 27, 2009.

Before the quiet title action was dismissed but after the trial court's ruling, Hartzell claims that he advised LPP to file a counterclaim for quiet title. LPP retained counsel to assess that advice. That counsel advised LPP that a counterclaim would be barred by principles of *res judicata*, given the ruling in the foreclosure action. LPP and its counsel in the quiet title action did not take Hartzell's advice, relying instead on their newly-retained counsel's legal opinion that any such new claim would be futile.

A month later, on February 8, 2007, Hartzell on behalf of LPP filed a motion in the foreclosure action, seeking to reopen proofs and asking the court to reconsider and to set aside the judgment. (Exh. 4 to Hartzell's Response). The motion stated that the failure to record the power of attorney from SBA to LPP was not grounds for the directed finding against LPP. Discussing cases

4

establishing that recording of a mortgage was sufficient notice of the lien on property, even without recording an assignment, Hartzell argued that Illinois law does not require that subsequent assignment of a mortgage be recorded in order for the mortgage lien to survive. In addition it appears that, at the time the motion was filed, Hartzell had located a properly executed power of attorney, had it recorded, and produced it to LPP. Despite 5 years of discovery in the foreclosure case, this document had not been previously produced.

Both of these motions were denied at a hearing on April 16, 2007.(Transcript of hearing attached to Response #50 as Exhibit 5). Denial of the motion to reconsider was based on the total lack of proof of an assignment of the Mortgage in favor of LPP. Denial of the motion to reopen proof was based in significant part on Hartzell's failure to move to reopen proof immediately upon the court's ruling at the close of LPP's case, rather than waiting to raise the issue in later motions.

To represent it on appeal, LPP retained counsel other than Hartzell In the appellate brief, LPP's counsel included five pages of argument for the proposition that assignment of a debt secured by a mortgage transfers ownership of the mortgage. It further argued that there had been no waiver of this argument, even though "it may not have articulated the argument as fully [in the trial court] as it has on appeal." (Exh. 9 to Response).

The Third District of the Illinois Appellate Court affirmed the trial court. The Opinion itself is not in the record, but LPP's Statement of Fact (unopposed in Defendants' Response) summarizes the conclusions of the Appellate Court as follows. The Appellate Court found that LPP had failed to meet its initial burden in the trial court of presenting a prima facie case; had waived the argument that assignment of the Note was sufficient to transfer ownership of the Mortgage by failing to raise that argument in the trial court; and had failed to produce in the trial court any evidence sufficient

5

to support its assertion that a valid assignment of the Mortgage took place. LPP's petition for leave to appeal to the Illinois Supreme Court was denied.

LPP then filed the instant legal malpractice case. This complaint alleges that Hartzell had a duty to LPP that it negligently breached, causing damage to LPP. In the Answer, Hartzell raised two affirmative defenses (Doc. #20), captioned "comparative fault" and "mitigation of damages." An additional affirmative defense was later filed (Doc. #48), captioned "proximate cause." The motion for partial summary judgment attacks the affirmative defenses of mitigation and proximate cause.

## DISCUSSION

### *Mitigation Defense*

In this affirmative defense, Hartzell asserts that LPP failed to mitigate its damages by "failing to take steps to enforce or protect their alleged legal interests in certain real property situated in Nauvoo, Illinois." Specifically, Hartzell asserts that LPP should have followed the advice Hartzell gave to LPP, namely that LPP should file a counterclaim in the quiet title action, rather than the advice of its counsel in the quiet title action, namely not to file a counterclaim in the quiet title action because such a counterclaim would be barred by *res judicata*.

"Under the doctrine of *res judicata*, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Highway J Citizens Group v. United States Dept. of Transp., 456 F.3d 734, 741 (7th Cir. 2006) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). There are three requirements for res judicata: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." Id.

6

Here there is no dispute that the parties in the quiet title action were the same as the parties in the foreclosure action, nor is it disputed that the judgment in the foreclosure action was a final judgment. The second element, identity of the causes of action, requires more analysis.

There is an identity of causes of action if a later claim emerges from the same core of operative facts as an earlier action. Id. . "[T]wo claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." Herrmann v. Cencom Cable Assoc., Inc., 999 F.2d 223, 226 (7th Cir. 1993) (citations omitted). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." Okoro v. Bohman, 164 F.3d 1059, 1062 (7th Cir. 1999). See also, Brzostowski v. Laidlaw Waste Sys., Inc., 49 F.3d 337, 339 (7th Cir. 1995)("While the legal elements of each claim may be different, the central factual issues are identical.") .

The two state court actions were based on the same factual allegations. Whether foreclosure or quiet title, the facts arose from LPP's purchase of the Note. Whether LPP had the legal ability to enforce the Mortgage (i.e. foreclose) or whether the owner of record had the right to clear its title in light of that Note (i.e. quiet title) depended in significant part on the ownership of the Note and Mortgage and the legal ramifications that flowed from them. Indeed, the parties do not assert that the underlying facts were sufficiently different to defeat this element.

Thus, the three requirements have been shown. "If these requirements are fulfilled, *res judicata* 'bars not only those issues which were actually decided in a prior suit, but also all other issues which could have been raised in that action.' " Highway J., 456 F.3d at 741, quoting Allen, 449 U.S. at 94. That would appear to answer the question in favor of LPP: filing of a counterclaim

7

would have been futile because it would have been barred by *res judicata*. See, e.g. River Park Inc. v. City of Highland Park, 703 N.E.2d 883 (Ill.1998).

Hartzell, however, characterizes the trial court's ruling as a finding that LPP lacked standing to pursue a foreclosure action and asserts the doctrine of *res judicata* does not apply to issues of standing. In support of that assertion, Hartzell submits the testimony of three expert witnesses, all lawyers retained for, *inter alia*, the purpose of rendering opinions about the doctrine of *res judicata*.[2] Although the depositions of these experts have been placed in the record, their Rule 26 reports appear nowhere. In the questioning of these experts, they were entirely unable to cite case law to support their opinions. Whether case law appeared in their reports is unclear. Their depositions are of no assistance in resolving this motion.

In Perry v. Sheahan, 222 F.3d 309 (7th Cir.2000)(Perry II), an earlier case (Perry I) had been dismissed for failure to demonstrate standing and hence for lack of subject matter jurisdiction. While acknowledging that such a dismissal is not a judgment on the merits under Fed.R.Civ.P. 41(b), the Court of Appeals held:

> Although only judgments on the merits preclude parties from litigating the same cause of action in a subsequent suit, that does not mean that dismissals for lack of jurisdiction have no preclusive effect at all. A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue. The difference is in the type of preclusion, not the fact of preclusion. A judgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only relitigation of the ground of that dismissal and thus has collateral estoppel (issue preclusion) effect rather than the broader res judicata effect that nowadays goes by the name of claim

---

[2]The general rule is that expert testimony is not admissible on questions of law. U.S. v. Farinella, 558 F.3d 695, 700 (7th Cir. 2009); Good Shepherd Manor Foundation v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003). This general rule may not apply with full force in legal malpractice cases. See, e.g., Middle Mkt. Fin. Corp. v. D'Orazio, - F. Supp. 2d -, 2002 WL 31108260, at *8-9 (S.D.N.Y.2002). This question is not presented here, but it will be considered prior to trial of this matter.

preclusion. Therefore, Perry cannot escape the preclusive effect of *Perry I* by the rote intonation that this is not a judgment on the merits. The determination that Perry lacked standing in *Perry I* precludes relitigation of the same standing argument in *Perry II*.

Id. at 317 -318

The State trial court ruled that LPP lacked standing to foreclose on the particular Mortgage at issue in the foreclosure action, and that the failure to demonstrate valid assignment meant that the SBA might still have an interest in the property, thereby preventing quieting of the title. As demonstrated in Perry, those rulings cannot be relitigated. Whether *res judicata* or *collateral estoppel* is the foundation of that statement matters not one bit. The finding of lack of standing was made final in the State courts, and this Court will not disturb that determination.

Hartzell's argument on this matter ignores one additional crucial matter: the Illinois Court of Appeals also held that LPP had failed to meet its initial burden of proof in the foreclosure action. Judgment entered as a failure to meet a burden of proof is a judgment on the merits, and regardless of whether the failure was one of fact, law, or application of law to facts, preclusion applies. Du Page Forklift Svc., Inc. v. Material Handling Systems, Inc., 744 N.E.2d 845, 852 (Ill.2001). Had LPP tried to counterclaim in the quiet title action, it would have been prevented from presenting evidence that was or could have been presented in the foreclosure action.

What does this means for the mitigation defense raised by Hartzell? The question that must be answered is whether counsel for LPP in the quiet title action had the opportunity to correct any error made by counsel for LPP in the foreclosure action. I conclude that there was no such opportunity. Given that the two cases were pending at the same time, in the same court, before the same judge, a counter-claim for quiet title raised by LPP against the very parties who had been sued in the foreclosure action, based on the same documentation (or lack thereof) would have either

9

suffered the same outcome as the foreclosure action (a finding of lack of standing, affirmed on appeal) or the claim would have been dismissed on grounds of preclusion. Either way, there was no opportunity for LPP to have "mitigated" Hartzell's error.

I therefore conclude that there is no merit to the mitigation defense. The motion for summary judgment on that defense is therefore GRANTED.

### *Proximate Cause Defense*

This affirmative defense sets out what Hartzell claims to be the real proximate cause of any damages suffered by LPP, namely successor counsel's conduct. Under Illinois law, where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the defendant's conduct is not the proximate cause of the injury unless "the defendant could reasonably foresee the intervening act." Robinson v. Boffa, 930 N.E.2d 1087 (Ill.App.2010), Bentley v. Saunemin Twp., 413 N.E.2d 1242 (Ill.1980).

There are several fatal problems with this defense. First, Hartzell asserts that LPP's counsel in the quiet title action was negligent by failing to "file a counter claim to enforce the mortgage in the Quiet Title Action.". (Amendment to Affirmative Defenses, ¶36 (Docket #48). Because such a counterclaim would have been precluded, as discussed above, filing it would have been futile; failing to file a precluded claim simply cannot constitute negligence, nor could that failure have proximately caused injury to LPP.

Hartzell next asserts that LPP's counsel in the appeal of the foreclosure action (the same counsel as represented LPP in the quiet title action) was negligent "by failing to sufficiently brief and argue that Defendants raised the issue that the owner and holder of a promissory note could enforce the attendant mortgage." (Amendment to Affirmative Defenses, ¶35 (Docket #48). In other

10

words, Hartzell believes that, had the issue been sufficiently briefed, the appellate court would have reversed the trial court, thereby eliminating injury to LPP. It was this failure, maintains Hartzell, that proximately caused any damages to LPP, and not anything Hartzell did in the trial court.

This argument overlooks one key factor: it is black letter law that an issue not raised in the trial court cannot be raised for the first time on appeal. So if Hartzell did not argue in the trial court that ownership of the Mortgage followed assignment of the Note, then this argument could not be raised on appeal for the first time. The Appellate Court ruled that the argument had not been raised in the trial court and, as a result, the argument had been waived.

This Court cannot consider whether that ruling was correct. The *Rooker-Feldman* doctrine precludes lower federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Review of state court judgments is possible only in the state court system and from there to the United States Supreme Court. Garry v. Geils, 82 F.3d 1362, 1366 (7th Cir. 1996).

Actions brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" are jurisdictionally barred. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), quoted in Hukic v. Aurora Loan Services 588 F.3d 420, 431 -432 (7th Cir. 2009). See also, Lance v. Dennis, 546 U.S. 459, 463 (2006)(the doctrine prevents a party from effectively trying to appeal a state-court decision in federal court). The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with the state court determinations. Ritter v. Ross, 992 F.2d 750,

753 (7th Cir. 1993). The key inquiry is whether the district court is in essence being called upon to review the state court decision. Id. at 754.

No aspect of this legal malpractice case can include evaluation of the question whether the State courts were correct in their rulings. Thus, Hartzell's assertion that it did in fact sufficiently raise the ownership issue is a non-starter. The Appellate Court's finding of waiver was not based on inadequacy of the briefing on the question; it was based on the failure to raise the issue in the trial court. Any conduct by successor counsel with respect to the substance or adequacy of the legal brief on this question is therefore precluded by the finding that the argument was not made by Hartzell in the first instance. This Court lacks jurisdiction to review these rulings.

Because it cannot be disputed that Hartzell failed to make the proper legal argument (i.e. that the mortgage follows the note) in the trial court, then successor counsel could have committed no intervening negligence unless LPP could file a second lawsuit against the property owner, properly proving up ownership of the mortgage. The question becomes - as it did with the mitigation defense above, whether such a lawsuit would be barred by res judicata/collateral estoppel.

The outcome as to preclusion is no different for this defense than it was for mitigation. The argument that the Mortgage follows the Note could have been made in the trial court. It was not, and there was nothing successor counsel could have done to change that omission. There was no intervening negligence on the part of successor counsel, so the defense that successor counsel's representation constituted an intervening proximate cause is rejected. The motion for summary judgment is granted.

## CONCLUSION

For the reasons stated herein, the motion for summary judgment is GRANTED as to the affirmative defenses of mitigation and intervening proximate cause. The Court believes that the rulings herein may be dispositive of many, if not all, remaining issues. This matter is therefore set for a telephone status conference on Thursday, June 16, 2011, at 9:30 a.m. At that conference, the parties shall be prepared to clearly articulate what legal issues remain and what factual disputes are pertinent to those legal issues.

ENTERED ON June 14, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE